**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DENEEN L. MONTGOMERY-SMITH,** | **CIVIL ACTION** |
| **Plaintiff** | |
| **VERSUS** | **NO.  17-5564** |
| **LOUISIANA DEPARTMENT OF** | **SECTION: "E"(3)** |
| **HEALTH AND HOSPITALS, ET AL.,** | |
| **Defendants** | |

## ORDER AND REASONS

Before the Court is Defendants Louisiana Department of Health and Hospitals ("DHH"), Darlene Warren Smith, and Devin George's (collectively "Defendants") Motion to Dismiss Plaintiff Deneen Montgomery-Smith's Second Supplemental and Amending Complaint.[1] The motion is opposed.[2] For the reasons that follow, the Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND[3]

Plaintiff Deneen Montgomery-Smith is an African-American female who is more than 40 years old.[4] Plaintiff became a permanent employee for the State of Louisiana on December 4, 1989,[5] working at the Department of Health and Hospitals, Office of the Bureau of Protective Services.[6] She alleges that on July 29, 2007, she was "transferred without her agreement" to the office of Vital Records after she brought an employment discrimination suit against DHH on April 13, 2007 in the Civil District Court for the Parish

---

[1] R. Doc. 60.
[2] R. Doc. 64.
[3] The facts stated herein derive from Plaintiff's original complaint, R. Doc. 1, as supplemented and amended by R. Docs. 27, 54. The Court accepts all of Plaintiff's well-pleaded facts as true. *See Baker v. Paul*, 75 F.3d 190, 196 (5th Cir. 1996). Unless otherwise indicated, "R. Doc." refers to record documents in the instant matter, No. 17-5564.
[4] R. Doc. 54 at ¶ 3.
[5] *Id.* at ¶ A, 4(j).
[6] *Id.* at ¶ 6.

1

of Orleans ("*Montgomery-Smith I*").[7] Plaintiff's first suit was based on EEOC charge No. 461-2006-01386 ("Charge 1").[8] Complaining of further discrimination and retaliation, Plaintiff filed a second employment discrimination suit against DHH on October 24, 2008 pursuant to EEOC Charge No. 846-2008-25755 ("Charge 2") alleging racial discrimination, retaliation, and hostile work environment ("*Montgomery-Smith II*").[9]

According to Plaintiff, "[f]or over four years after filing the lawsuits . . . , [she] remained enthralled in active litigation against [DHH]."[10] During this time, Plaintiff alleges Hugh Eley, who was promoted to Deputy Secretary of DHH in 2015; Darlene Smith, State Registrar; and Devin George, a supervisor, met "to discuss the first two pending lawsuits,"[11] and to "obtain[] negative information about [Plaintiff] as an employee."[12] Plaintiff also alleges Darlene Smith told Devin George that Plaintiff was transferred to vital records as punishment for having filed her employment discrimination suits,[13] and that Hugh Eley told Plaintiff "she would never be promoted as a DHH employee."[14]

In 2014, Plaintiff "began applying for competitive positions posted by DHH that were consistent with her training, education, and experience, and that would have provided her increases in salary between 7% and 14%."[15] Plaintiff alleges she was passed over for several positions, which were either filled by less-qualified employees or the

---

[7] *Id.* ¶ 6, 7.

[8] *Id.* at ¶ 6, 7, 9.

[9] *Id.* ¶ 9. *See Montgomery-Smith v. Louisiana Department of Health and Hospitals, Office of Aging and Adult Services, Bureau of Protective Services*, No. 08-4737 (E.D. La. Oct. 24, 2008) (before Lemmon, J.). The Court dismissed *Montgomery-Smith II* on November 21, 2011 after having been informed that the parties had reached a firm agreement. *See* No. 08-4737, R. Doc. 158.

[10] R. Doc. 54 at ¶ 10.

[11] *Id.* at ¶ 11(e).

[12] *Id.* at ¶ 11(d).

[13] *Id.* at ¶ 11(b), (c).

[14] *Id.* at ¶ 11(a).

[15] *Id.* at ¶ 14.

position was cancelled after Plaintiff applied.[16] On March 26, 2015, Plaintiff filed a third employment discrimination charge with the EEOC,[17] No. 461-2015-00606 ("Charge 3"), for which she received her right-to-sue letter on August 31, 2015.[18] "Out of an abundance of caution, on November 5, 2015, [Plaintiff] filed another charge of discrimination and retaliation for continuing discrimination between July 1, 2015 and October 7, 2015,"[19] No. 461-2016-00165 ("Charge 4").[20]

Plaintiff brought suit against DHH based on Charge 3 and Charge 4 on November 30, 3015 ("*Montgomery-Smith III*").[21] Although Plaintiff had filed Charge 4, she had not yet received her right-to-sue letter based on this charge by the time she filed suit in *Montgomery-Smith III*. On February 21, 2017, the Court dismissed Plaintiff's claims based on Charge 4 for failure to exhaust administrative remedies.[22] Following a trial on Plaintiff's remaining claims, on July 28, 2017 a jury found in favor of Defendants as to all claims.[23]

Plaintiff alleges she received her right-to-sue letter for Charge 4 for the first time on March 7, 2017, despite the letter being dated December 1, 2015.[24] On February 9, 2017, Plaintiff filed her fifth charge of discrimination, No. 461-2017-00431 ("Charge 5"), with the EEOC and received her right-to-sue letter for that charge on September 28, 2017.[25]

---

[16] *Id.* at ¶ 14(a)−(h).
[17] R. Doc. 30-4 at 3 (EEOC Charge filed March 26, 2015).
[18] R. Doc. 33-5.
[19] No. 15-6369, R. Doc. 23 at ¶ 34.
[20] R. Doc. 54 at ¶ 91.
[21] No. 15-6369, R. Doc. 1.
[22] No. 15-6369, R. Doc. 45 at 12−14 ("Plaintiff has not exhausted her administrative remedies with respect to her claims alleged in her November 5, 2015 EEOC compliant and therefore these claims must be dismissed. Stated differently, Plaintiff's Title VII claims based on acts that occurred after March 26, 2015 are dismissed for failure to exhaust.").
[23] No. 15-6369, R. Doc. 111. Following trial, Plaintiff filed a motion for judgment notwithstanding the verdict. No. 15-6369, R. Doc. 119. In her opposition to Defendants' motion to dismiss, Plaintiff states this motion is "still pending." R. Doc. 64 at 2 (filed 01/05/2018). Contrary to Plaintiff's assertion, the Court denied Plaintiff's post-verdict motion on November 27, 2017. No. 15-6369, R. Doc. 142.
[24] R. Doc. 54 at ¶ 93, 94.
[25] *Id.* at ¶ 76.1.

Plaintiff filed the instant suit ("*Montgomery-Smith IV*") on June 5, 2017, based on both Charge 4 and Charge 5.[26]

In Charge 4, Plaintiff complained of conduct that took place between July 1, 2015 and October 7, 2015.[27] Under the type of discrimination, she checked the "retaliation" and "age" boxes.[28] In the Particulars section she claimed to have "been subjected to unfair treatment due to [her] age and retaliated against for filing prior claims with the EEOC, and with the Agency (sic) Lawsuits and Grievances."[29] She also complained that she had "been denied promotional and progressive advancement opportunities,"[30] and stated that she believed she had "been discriminated against because of [her] age, 51 years, and retaliated against in violation of The Age Discrimination in Employment Act of 1967, as amended."[31]

In Charge 5, the alleged violations took place between September 7, 2016 and December 5, 2016.[32] Under the type of discrimination, Plaintiff checked the "race," "retaliation," and "age" boxes.[33] In the particulars section, Plaintiff reported that since she filed Charge 3 and Charge 4, she was not selected for two promotions for which she applied, complaining that the two individuals selected "were younger, less qualified than [her] and one of them was white."[34] She concluded the particulars section stating that she

---

[26] R. Doc. 1.

[27] R. Doc. 60-5. Although Charge 4 is attached to Defendants' motion to dismiss, the Court may consider it without converting Defendants' motion to dismiss to one for summary judgment, as "the complaint refers to the document and [it is] central to the claim." *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

[28] *Id.* The Court notes that Charge 4 is based on age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"); however, in this case, Plaintiff does not bring a claim under the ADEA.

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] R. Doc. 60-7.

[33] *Id.*

[34] *Id.*

believes she "was discriminated against due to [her] race, and age (52) in that [she] was not selected for a promotion . . . in retaliation for filing EEOC charges of Discrimination [sic], filing a lawsuit in court, and filing internal grievances due to unfair treatment all in violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act of 1967."[35]

In her complaint, Plaintiff alleges she has been denied promotions and advancement opportunities and subjected to a hostile work environment through purposeful discrimination, harassment, intimidation, isolation, denial of promotion, denial of advancement opportunities, retaliatory conduct, refusal to have discussions with Plaintiff about grievances, and refusal to hold hearings for grievances filed by Plaintiff.[36] According to Plaintiff, "[t]he denial of promotions and details in this case are between effective dates of August 3, 2015 and December 5, 2016."[37] During this time frame, Plaintiff alleges she applied for, but was not hired to the following positions:

a. Program Manager 2 application by Deneen Montgomery Smith on or about June 27, 2015 to which Robin Lewis (BF) was promoted effective August 3, 2015;

b. Program Manager 1-B -DHH application by Deneen Montgomery-Smith on or about June 27, 2015 to which Jemimah Mickel (BF) was promoted effective August 3, 2015;

c. Program Manager 1-B -DHH application by Deneen Montgomery-Smith on or about August 29, 2015, and the position was cancelled after Deneen Smith applied;

d. Reposted Program Manager 1-B -DHH application by Deneen Montgomery-Smith on or about September 15, 2015 to which Omar Khalid (Islamic Male) was promoted effective October 12, 2015;

e. Program Monitor Supervisor application by Deneen Montgomery-Smith to which Jira Shea Davis (BF) was promoted effective September 28, 2015;

f. Program Monitor Supervisor application by Deneen Montgomery-Smith on or about May 22, 2016, and the position was cancelled after Deneen Smith applied;

---

[35] *Id.*
[36] R. Doc. 54 at ¶¶ 76, 76.1, 94, and 94.1.
[37] R. Doc. 64 at 25–26.

g. Program Monitor Supervisor application by Deneen Montgomery-Smith on or about September 7, 2016 to which Lauren Tran (WF) was promoted effective December 5, 2016;

h. Program Manager II application by Deneen Montgomery-Smith on or about September 20, 2016 to which Jemimah Mickel (BF) was promoted effective December 5, 2016.[38]

Plaintiff alleges that after she applied to these positions, the position was either canceled because she had applied, or the position was filled by an employee who is less qualified for it than Plaintiff.[39] According to Plaintiff, Devin George and Darlene Smith harassed her, interfered with the terms and conditions of her employment, and prevented her promotional opportunities under the Louisiana State Merit System by detailing and promoting candidates who are less qualified than her in retaliation for having filed previous EEOC charges.[40]

Plaintiff additionally alleges she "requested Devin George offer her opportunities to be detailed into available positions to gain more experience that would have also provided her increases in salary between 7% and 14%," but never received the opportunity.[41]

According to Plaintiff, she "is still employed at DHH Office of Public Health, Louisiana Center for Records and Statistics and is still being subjected to discrimination, retaliation, denial of promotion, advancement opportunities, intimidation, isolation, harassment[,] and a hostile work environment."[42]

On August 11, 2017, Defendants filed their first motion to dismiss.[43] On September 21, 2017, the Court issued an Order dismissing Defendants' motion without prejudice,

---

[38] R. Doc. 54 at ¶ 14(a)–(h).
[39] *Id.* at ¶¶ 16–24 (Robin Lewis), ¶ 49 (Omar Khalid), ¶ 57 (Jira-Shea Davis), ¶ 68 (Lauren Tran), ¶ 70.6 (Jemimah Mickel).
[40] *Id.* at ¶¶ 72, 85, 100, 106, 107, 115, 126, 133.
[41] *Id.* at ¶ 15.
[42] *Id.* at ¶ 87.
[43] R. Doc. 15.

granting Plaintiff leave to amend her complaint, and allowing Defendants the opportunity to re-urge the motion upon the filing of Plaintiff's amended complaint.[44]  On October 2, 2017, Plaintiff filed a First Supplemental and Amended Restated Complaint.[45] On October 25, 2017, Defendants filed their second motion to dismiss for failure to state a claim.[46] Having received the right-to-sue letter for Charge 5 on October 14, 2017,[47] Plaintiff sought leave to file a Second Amended and Restated Complaint on October 30, 2017.[48] The motion was referred to the magistrate.[49] On November 16, 2017, the magistrate granted Plaintiff's motion for leave to file an amended complaint,[50] which is the subject of Defendant's instant Motion to Dismiss.[51] The Court, having granted Plaintiff leave to amend her complaint, denied Defendants' second motion to dismiss without prejudice as moot.[52] On December 18, 2017, Defendants filed their third motion to dismiss, which is now before the Court.[53]

In her second amended complaint, Plaintiff alleges five causes of action against DHH and against Smith and George in their official and individual capacities arising under:

(1) 42 U.S.C. § 2000e, based on retaliation, race discrimination, and a hostile work environment;[54]
(2) 42 U.S.C. § 1981, based on retaliation, race discrimination, and a hostile work environment;[55]

---

[44] R. Doc. 25.
[45] R. Doc. 27.
[46] R. Doc. 33.
[47] *See* R. Doc. 35-1 at 1. The right to sue later based on Charge 5 was mailed on September 28, 2017. *See* R. Doc. 54-2.
[48] R. Doc. 35.
[49] *Id.*
[50] R. Doc. 53. Although he granted Plaintiff's motion for leave to file her second amended complaint, Magistrate Judge Knowles denied Plaintiff's motion to withdraw her previously made jury demand. *Id.* at 2.
[51] R. Doc. 54.
[52] R. Doc. 55.
[53] R. Doc. 60.
[54] R. Doc. 54 at ¶¶ 97–103.
[55] *Id.* at ¶¶ 104–10.

(3) 42 U.S.C. § 1983, for violations of Title VII and Louisiana Revised Statutes 9:2798.1;[56]

(4) Louisiana Revised Statutes 23:301–312;[57] and

(5) Louisiana Revised Statutes 51:2256, based on retaliation for having filed her previous suits against Defendants.[58]

In their motion to dismiss, Defendants argue Plaintiff's claims based on Charge 4 should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and that her remaining claims based on Charge 5 should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[59]

## I.    LEGAL STANDARD

### A.  Dismissal under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims."[60] A motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) challenges a federal court's subject-matter jurisdiction.[61] Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[62] "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts."[63]

---

[56] *Id.* at ¶¶ 111–21.

[57] *Id.* at ¶¶ 122–28.

[58] *Id.* at ¶¶ 129–35.

[59] R. Doc. 60. The Court notes that in her Opposition, Plaintiff concedes her Title VII claims against all Defendants for punitive or exemplary damages and § 1981 claims against DHH for punitive or exemplary damages must be dismissed. R. Doc. 64 at 25, 28. Accordingly, these claims are dismissed.

[60] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

[61] *See* Fed. R. Civ. P. 12(b)(1).

[62] *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted).

[63] *In re FEMA*, 668 F.3d at 287.

Thus, in examining a <u>Rule 12(b)(1)</u> motion, the district court is empowered to consider factual matters that may be in dispute.[64] "When, as here, grounds for dismissal may exist under both Rule 12(b)(1) and Rule 12(b)(6), the Court should, if necessary, dismiss only under the former without reaching the question of failure to state a claim."[65]

## B. Dismissal under Rule 12(b)(6)

Pursuant to <u>Federal Rule of Civil Procedure 12(b)(6)</u>, a district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief may be granted if the plaintiff has not set forth factual allegations in support of his claim that would entitle him to relief.[66] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[67] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[68] However, the court does not accept as true legal conclusions or mere conclusory statements,[69] and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[70] "[T]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" or "naked assertion[s] devoid of further factual enhancement" are not sufficient.[71]

---

[64] <u>*Crane v. Johnson*, 783 F.3d 244, 251 n.21 (5th Cir. 2015)</u>; <u>*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)</u>.

[65] <u>*Valdery v. Louisiana Workforce Comm'n*, No. 15-01547, 2015 WL 5307390, at *1 (E.D. La. Sept. 10, 2015)</u>.

[66] <u>*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)</u>; <u>*Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)</u>.

[67] <u>*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)</u> (quoting <u>*Twombly*, 550 U.S. at 570</u>).

[68] <u>*Id.*</u>

[69] <u>*Id.*</u>

[70] <u>*S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)</u> (citing <u>*Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)</u>).

[71] <u>*Iqbal*, 556 U.S. at 663, 678</u> (citations omitted).

"Factual allegations must be enough to raise a right to relief above the speculative level."[72] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."[73]

## II. ANALYSIS

### A. Timeliness of Defendants' Motion to Dismiss

As an initial matter, Plaintiff contends Defendants' motion to dismiss should be denied as untimely.[74] She argues the time limitations set forth in Federal Rule of Civil Procedure 15(a)(3) apply to Defendants' motion. Rule 15(a)(3) states: "Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later."[75] Defendants respond, pointing out that Rule 15's time constraints do not apply to their motion, as it is not a "required response" within the meaning of the Rule.

In *Hoffman v. Jindal*, the U.S. District Court for the Middle District of Louisiana held that Rule 15(a)(3)'s time limitations do not apply to motions filed pursuant to Rule 12.[76] As the court in *Hoffman* explained, "[S]ince a 12(b)(6) motion is not a responsive pleading it [does] not need to be filed within the time constraints imposed by Rule 15(a)(3). Instead, the motion to dismiss should be governed by the time constraints imposed by Rule 12(b)(6)."[77] Rule 12 simply requires a motion filed pursuant to the rule

---

[72] *Twombly*, 550 U.S. at 555.
[73] *Id.* (quoting FED. R. CIV. P. 8(a)(2)).
[74] R. Doc. 64 at 3.
[75] FED. R. CIV. P. 15(a)(3).
[76] No. 12-796, 2014 WL 130981 (W.D. La. Jan. 10, 2014).
[77] *Id.* at *3 (citations omitted) (citing *Automotive Indus. Pension Trust Fund v. Ali*, No. 11-5216, 2012 WL 2911432 (S.D. Cal. July 16, 2012); *Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Door, LLC*, No. 10-677, 2012 WL 202664 (S.D. Cal. Jan. 23, 2012)).

be filed before pleading.[78] As a result, because the time limitations detailed in Rule 12 apply to Defendants' motion, not Rule 15 as Plaintiff contends, the Court finds Defendants' motion is timely.

### B. Defendants' 12(b)(1) Motion

Defendants argue Plaintiff's claims related to Charge 4 must be dismissed as untimely, arguing Plaintiff failed to file suit based on that charge within 90 days of receiving her right-to-sue letter.[79] Plaintiff counters claiming that, although the issue date noted on the right-to-sue letter is December 1, 2015, she did not actually receive the letter until March 7, 2017. Thus, having filed this suit on June 5, 2017, Plaintiff submits the suit is timely.

Before filing a claim in federal district court, a plaintiff alleging employment discrimination must exhaust the administrative remedies available to her.[80] Administrative remedies include timely filing a charge of discrimination with the EEOC, and if the EEOC dismisses this charge, it must "notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."[81] Plaintiffs have ninety days from the date they receive their right-to-sue letter to file a lawsuit.[82] The requirement that a plaintiff file a lawsuit within this ninety-day period is "strictly construed."[83] "Although [the] filing of an EEOC

---

[78] FED. R. CIV. P. 12.

[79] R. Doc. 60-1 at 12–15. The Court notes that Defendants refer to what the Court refers to as "Charge 4" as "Charge 1." However, both refer to Charge No. 461-2016-00165.

[80] *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) (per curiam).

[81] 42 U.S.C. § 2000e–5(f)(1).

[82] *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009) (per curiam) ("A plaintiff alleging employment discrimination must file a civil action no more than ninety days after she receives statutory notice of her right to sue from the EEOC."); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002) ("Title VII provides in no uncertain terms that the ninety-day period of limitations begins to run on the date that the EEOC right-to-sue letter is received . . . .").

[83] *Taylor*, 296 F.3d at 379; *see also Butler v. Orleans Parish Sch. Bd.*, No. 00-0845, 2001 WL 1135616, at *2–3 (E.D. La. Sept. 25, 2001) (dismissing Title VII claims when plaintiff filed her complaint one day beyond the ninety-day period).

charge is not a jurisdictional prerequisite, it 'is a precondition to filing suit in district court.'"[84] Plaintiff filed this suit on June 5, 2017.[85] Thus, whether Plaintiff's complaint based on Charge 4 should be dismissed as untimely depends on whether Plaintiff received the notice of her right to sue before March 7, 2017.

"When doubt exists as to whether [and when] an addressee received a letter,"[86] the court must apply the mailbox rule, which provides that "[p]roof that a letter properly directed was placed in a U.S. post office mail receptacle creates a presumption that it reached its destination in the usual time and was actually received by the person to whom it was addressed."[87] In this Circuit, once a party establishes this presumption, courts assume a properly mailed letter would be received within three days.[88] "A threshold question for the application of the mailbox rule is whether there is sufficient evidence that the letter was actually mailed."[89] "Placing a letter in the mail may be proved by circumstantial evidence," such as "evidence of the sender's standard mailing practices,"[90] or a sworn statement that the letter was sent.[91] Once the presumption is created, "[t]he addressee's 'bare assertion of non-receipt' is insufficient to rebut the assumption."[92]

In *Duron v. Albertson's LLC*, the Fifth Circuit reversed the district court's grant of summary judgment based on the mailbox rule.[93] The Fifth Circuit found the court below improperly applied the rule and that, as a result, a genuine issue of material fact remained

---

[84] *Taylor*, 296 F.3d at 379 (quoting *Dao*, 96 F.3d at 789).
[85] *See* R. Doc. 1.
[86] *Gamel v. Grant Prideco, LP*, 625 F. App'x 690, 694 (5th Cir. 2015).
[87] *United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) (per curiam) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)); *see also Taylor*, 296 F.3d at 379 (applying presumption of receipt in Title VII context).
[88] *Zamora v. GC Servs., LP*, 647 F. App'x 330, 332 (5th Cir. 2016).
[89] *Duron v. Albertson's LLC*, 560 F.3d 288, 290 (5th Cir. 2009).
[90] *Gamel*, 625 F. App'x at 694 (citing *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007)).
[91] *Custer*, 503 F.3d at 420.
[92] *Ekong*, 518 F.3d at 287.
[93] 560 F.3d 288, 289–90 (5th Cir. 2009).

as to whether and when the plaintiff received notice of her right to sue.[94] The plaintiff alleged she did not receive her right-to-sue letter, which was dated October 4, 2004, until August 24, 2006.[95] She presented evidence that, prior to receiving the letter, she and her attorney made several calls to the EEOC inquiring as to the status of her case that went without response.[96] The employer moved for dismissal or, alternatively, summary judgment, based on the plaintiff's failure to timely bring suit. The district court granted the employer's motion for summary judgment, holding that the plaintiff's evidence of non-receipt was insufficient to rebut the mailbox-rule's presumption, thus rendering her lawsuit untimely.[97]

On appeal, the Fifth Circuit noted that the employer "ha[d] not produced any business records or other physical evidence that the EEOC sent the notice of the right to sue."[98] "Instead, the only evidence of mailing that [the employer] provided was a copy of the EEOC notice of right to sue with '10/4/04' written in the 'Date Mailed' field."[99] Because the employer failed to provide any "proof that a letter properly directed was placed in a post office," and the plaintiff provided some, albeit weak, evidence of non-receipt, the employer failed to create a presumption of receipt and the mailbox rule did not apply.[100]

Similarly, in *Zamora v. GC Services, LP*, the Fifth Circuit reversed the district court's grant of summary judgment, finding the employer had failed to provide sufficient

---

[94] *Id.*
[95] *Id.* at 290.
[96] *Id.* at 289.
[97] *Id.*
[98] *Id.* at 291.
[99] *Id.*
[100] *Id.* (quoting *Hagner v. United States*, 285 U.S. 427, 430 (1932)).

evidence to create the presumption that the plaintiff's right-to-sue letter was sent on a particular date. The Court stated:

> [T]he evidence shows that the notice in this case contains a "Date Mailed" field, stamped August 19, 2014. An internal EEOC log notes the notice was "issued" on August 18, and that the file was returned to a different EEOC division on August 22, 2014, effectively closing the case. A declaration from an EEOC official in the relevant office notes the EEOC's "usual and regular procedure" is "to mail the [right to sue notice] on the same day, or in some instances on the following day" as the date reflected on the notice. This furnishes some circumstantial evidence of normal business practices, but does not definitively show the notice was mailed on August 19. Indeed, it is some evidence that it might have been mailed on August 20. That one day difference is enough to impact this case.[101]

The Fifth Circuit concluded that based on this evidence, the district court incorrectly applied the mailbox rule in treating August 19 as the undisputed date the letter was sent, as the Defendants had failed to bear their initial burden of proof.[102]

In their motion to dismiss, Defendants point to: (1) two emails an EEOC enforcement officer sent to Plaintiff, both of which are referenced in and attached to Plaintiff's complaint;[103] (2) the notice of charge of discrimination Devin George allegedly received on December 9, 2015;[104] and (3) the notice of charge of discrimination DHH allegedly received on December 9, 2015.[105]

The first email sent to Plaintiff from the EEOC enforcement officer, dated March 2, 2017, states "The Notice of Right to Sue was issued by the EEOC (not DOJ) . . . to you on December 1, 2015 as requested by you. It was mailed to your address on record."[106] The second email dated March 7, 2017, to which Plaintiff's right-to-sue letter was attached electronically, states "Attached is a copy of the Notice of Right to Sue that was issued to

---

[101] 647 F. App'x at 332–33 (internal citations omitted).
[102] *Id.*
[103] R. Doc. 54 at ¶ 92–93; R. Doc. 27-1.
[104] R. Doc. 60-6.
[105] R. Doc. 60-7.
[106] R. Doc. 27-1 at 3–4.

you on December 1, 2015."[107] Defendants otherwise offer no evidence to establish the letter *addressed to Plaintiff* was actually placed in the mail, thereby establishing the applicability of the mailbox rule.[108]  There is no direct testimony or business records evidence from either party of whether the right-to-sue letter was ever mailed.[109]

Based on the evidence presently before the Court, the Court finds Defendants have failed to demonstrate that Plaintiff's right-to-sue letter based on Charge 4 was actually "properly directed [and] placed in a U.S. post office mail receptacle," and therefore, Defendants have failed to establish that the mailbox rule applies. "[W]hile proof of receipt is unnecessary, we cannot forget that proof of mailing is still required."[110] Defendants' motion to dismiss for lack of jurisdiction is denied.

### C. Defendants' 12(b)(6) Motion

#### a. Res Judicata

Defendants argue Plaintiff's claims based on Charge 4 are precluded by *Montgomery-Smith III*.[111] Plaintiff responds that she "does not seek to make any claims prior to March 26, 2015."[112] Rather, "[t]he denial of promotions and details in this case are between effective dates of August 3, 2015 and December 5, 2016."[113] She argues that, because she has not been promoted in ten years, and "alleges in this case that the hostile

---

[107] R. Doc. 27-1 at 2.
[108] In contrast, Plaintiff: (1) alleges she did not receive her right-to-sue letter until March 7, 2017; (2) attaches to her complaint a series of emails demonstrating that she had inquired about her right-to-sue letter on (a) November 12, 2015; (b) May 3, 2016; (c) February 28, 2017; and (d) March 5, 2017; and (3) attaches the EEOC enforcement manager's email responses to her inquires, dated March 2 and March 7, 2017, the second of which included a copy of Plaintiff's right to sue.
[109] *Compare Duron*, 560 F.3d at 291 (noting the absence of this evidence was insufficient for presuming receipt of a right to sue notice), *with Gamel*, 625 F. App'x at 694–95 (involving business records and testimony that the notice was mailed on a particular date). The Court notes that the letters addressed to Devin George and DHH constitute evidence outside the pleadings and evidence more appropriate for summary judgment. Even if the Court could consider them, they alone are not proof the right-to-sue letter was actually sent *to Plaintiff*.
[110] *Custer*, 503 F.3d at 422.
[111] R. Doc. 60-1 at 16–19.
[112] R. Doc. 64 at 25.
[113] *Id.* at 25–26.

work environment continues and the same behavior that existed before March 25, 2015 continues today," *Montgomery-Smith III*, does not preclude her from bringing the instant claims.[114]

The doctrine of res judicata, or claim preclusion, prevents the relitigation of claims that were or could have been raised in a prior action.[115] Res judicata has four elements:

(1) the parties in both the prior suit and current suit must be identical;
(2) a court of competent jurisdiction must have rendered the prior judgment;
(3) the prior judgment must have been final and on the merits; and
(4) the plaintiff must raise the same cause of action in both suits.[116]

The first three elements of res judicata are clearly met in this case. Only the fourth factor—whether the causes of action were the same in both suits—is at issue.

In support of their argument that Plaintiff's claims based on Charge 4 are precluded by *Montgomery-Smith III*, Defendants point to *Davis v. Dallas Rapid Area Transit*.[117] In *Davis*, the Fifth Circuit considered whether the doctrine of res judicata applied in the employment discrimination context. In that case, the plaintiffs had previously brought suit based on a prior-issued right-to-sue letter, but brought a second suit after having received a second right-to-sue letter. Notably, the plaintiffs in *Davis* did not receive their second right-to-sue letter until over a month after final judgment in the first suit was entered. The employer moved to dismiss the second suit as res judicata. The plaintiffs asserted that the claims in their second suit could not be considered part of the same series of transactions as those in in their first suit, because the conduct alleged in the second suit, which spanned March 2001 to April 2002, was different from that alleged in their first suit, which spanned November 1998 to February 2001.[118]

---

[114] *Id.* at 64.
[115] *Allen v. McCurry*, 449 U.S. 90, 94 (1980).
[116] *Howe v. Vaughan*, 913 F.2d 1138, 1143–44 (5th Cir. 1990).
[117] 383 F.3d 309 (5th Cir. 2004).
[118] *Id.* at 314.

The Fifth Circuit first analyzed whether the first and second cases were both based on the same series of transactions. The court concluded that, although the "factual allegations articulated in the two complaints differ, all of the claims in question originate from the same continuing course of allegedly discriminatory conduct by DART and Chief Rodriguez. Additionally, both lawsuits cite the same motivation for the alleged discrimination—that Appellants 'continue to publicly speak out against race discrimination [at DART].'"[119]

The Fifth Circuit then considered whether a Title VII claim may be barred by res judicata if, at the time of the earlier suit, the plaintiffs have not yet received a right-to-sue letter. In holding that the plaintiffs' first suit precluded the second suit, the Fifth Circuit noted that "[t]o prevent their claims from being precluded, Appellants could have requested a stay in *Davis I* until they received their letters."[120] In so holding, the Fifth Circuit cited several of our sister circuits, all of which have similarly held that Title VII claims are barred "where the plaintiff failed to take measures to avoid preclusion under res judicata while they pursued the requisite Title VII remedies."[121]

The case presently before the Court is distinguishable from *Davis* and its progeny. Plaintiff initially brought Charge 4 as a part of her case in *Montgomery-Smith III*, but the

---

[119] *Id.* at 314.
[120] *Id.* at 316.
[121] *Id.* at 315–16 (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–15 (9th Cir. 2001) (holding Title VII claims were not exempt from claim preclusion where plaintiffs failed to seek a stay of proceedings or to amend their complaint); *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225–26 (7th Cir. 1993) ("Parties to Title VII actions enjoy no immunity from res judicata . . . ."); *cf. Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 63 (1st Cir. 2000) (holding Title VII claim subject to res judicata where plaintiff received right-to-sue letter during pendency of prior action); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (finding ADA claim was not exempt from res judicata where plaintiff failed to obtain right-to-sue letter during pendency of previous litigation); *Churchill v. Star Enters.*, 183 F.3d 184, 193–94 (3d Cir. 1999) (same); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032–33 (6th Cir. 1998) (plaintiff's claims were barred by res judicata where she could have obtained a right-to-sue letter and perfected her claim during the two-year pendency of prior action)).

Court dismissed the allegations based on that charge for failure to exhaust.[122] Because Charge 4 was dismissed without prejudice in *Montgomery-Smith III*, Plaintiff brought the present suit based on Charge 4 and Charge 5 on June 5, 2017.[123] On June 8, 2017, the Court issued a rule to show cause why *Montgomery-Smith III* and *Montgomery-Smith IV* were not related,[124] and on June 16, 2017, Plaintiff moved to have the cases consolidated.[125] In her motion to consolidate, Plaintiff explained that she sought to consolidate the two cases "to avoid any issues of collateral estoppel if the related cases are not tried together before the same jury, and to avoid inconsistent results from two juries involving essentially the same material causes of action."[126] On June 19, 2017, the Court denied Plaintiff's motion to consolidate the cases, explaining that "[b]ecause trial is set to begin in approximately one month, [and] the parties have already filed their proposed jury instructions, jury verdict form, and voir dire questions," the "Court [would] not delay the trial of [*Montgomery-Smith III*] at [that] late date."[127]

The causes of action in this case unquestionably overlap with the underlying allegations in *Montgomery-Smith III*. However, because in this case Plaintiff states she does not "make any claims prior to March 26, 2015,"[128] the date the Court in *Montgomery-Smith III* found was the last date upon which Plaintiff could rest her claims,[129] and took "measures to avoid preclusion under res judicata while [she] pursued

---

[122] No. 15-6369, R. Doc. 45 at 12–14 ("Plaintiff has not exhausted her administrative remedies with respect to her claims alleged in her November 5, 2015 EEOC compliant and therefore these claims must be dismissed. Stated differently, Plaintiff's Title VII claims based on acts that occurred after March 26, 2015 are dismissed for failure to exhaust.").
[123] R. Doc. 1.
[124] R. Doc. 3.
[125] R. Doc. 6.
[126] *Id.* at ¶ 8.
[127] R. Doc. 8 at 1–2.
[128] *Id.* at 25
[129] No. 15-6369, R. Doc. 45 at 32–33 (dismissing all claims based on events that occurred after March 26, 2017 without prejudice).

the requisite Title VII remedies,"[130] the Court finds Plaintiff's Title VII claims based on Charge 4 and Charge 5 are not barred by collateral estoppel. Defendants' motion to dismiss based on res judicata is denied.

### b. Plaintiff's § 1981 claims

Defendants next contend Plaintiff's claims based on § 1981 must be dismissed as improperly pleaded.[131] They contend § 1981 is not a viable claim against state actors standing alone, and must instead be pleaded through § 1983.[132]

Section 1981 prohibits intentional discrimination based on race in contracting and certain other activities[133] and is frequently used to assert employment discrimination claims against private actors.[134] The statute provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.[135]

---

[130] *Id.* at 315–16 (citing *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 714–15 (9th Cir. 2001) (holding Title VII claims were not exempt from claim preclusion where plaintiffs failed to seek a stay of proceedings or to amend their complaint); *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 225–26 (7th Cir. 1993) ("Parties to Title VII actions enjoy no immunity from res judicata . . . ."); *cf. Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 63 (1st Cir. 2000) (holding Title VII claim subject to res judicata where plaintiff received right-to-sue letter during pendency of prior action); *Jang v. United Techs. Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000) (finding ADA claim was not exempt from res judicata where plaintiff failed to obtain right-to-sue letter during pendency of previous litigation); *Churchill v. Star Enters.*, 183 F.3d 184, 193–94 (3d Cir. 1999) (same); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032–33 (6th Cir. 1998) (plaintiff's claims were barred by res judicata where she could have obtained a right-to-sue letter and perfected her claim during the two-year pendency of prior action)).

[131] R. Doc. 60-1 at 20–21.

[132] *Id.* at 20.

[133] *Gen. Bldg. Contractor's Ass'n v. Pennsylvania*, 458 U.S. 375, 384–86 (1982).

[134] *See, e.g., Saint Francis College v. al-Khazraji*, 481 U.S. 604, 614 (1987) (Brennan, J., concurring); *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 273–74 (5th Cir. 1997).

[135] 42 U.S.C. § 1981(a).

"Although § 1981 does not itself use the word 'race,' the [U.S. Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts."[136]

In *Jett v. Dallas Independent School District*,[137] the U.S. Supreme Court explicitly held that "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the *exclusive* federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."[138] Following the U.S. Supreme Court's holding in *Jett*, there was uncertainty as to whether *Jett*'s holding extended to both official capacity and individual capacity claims alike.[139]

The Fifth Circuit interpreted *Jett*'s scope in *Felton v. Polles*.[140] In *Felton*, the Fifth Circuit held that the rule articulated in *Jett* applied to both individual and official capacity claims against state actors,[141] explaining that "[t]he Supreme Court did not make a distinction between state entities and individuals acting pursuant to color of state law."[142] Thus, "when a state employee seeks to hold an individual fellow state employee liable in damages for violation of § 1981 rights, such claim must also be pursued under the remedial provisions of § 1983."[143]

---

[136] *Saint Francis College*, 481 U.S. at 609 (citing *Runyon v. McCrary*, 427 U.S. 160, 168, 174–75 (1976)).
[137] 491 U.S. 701 (1989).
[138] *Id.* at 735 (emphasis added).
[139] In *Jett*, the specific issue addressed by the Supreme Court was whether "§ 1981 provides an independent federal cause of action for damages against local government entities, and whether such a cause of action is broader than the damages remedy available under 42 U.S.C. § 1983, such that a municipality may be held liable for its employees' violations of § 1981 under a theory of respondeat superior," a form of liability unavailable under § 1983. *Id.* at 705. In concluding that it does not, Jett emphasized that the consequence of the holding is that "the school district may not be held liable for its employees' violations of the rights enumerated in § 1981 under a theory of respondeat superior." *Id.* at 738. Thus, arguably, *Jett* only addressed whether § 1981 could be asserted as an independent cause of action against a state or municipal entity.
[140] 315 F.3d 470, 482 (5th Cir. 2002), *abrogation on other grounds recognized by Jackson v. Honeywell Intern., Inc.*, 601 F. App'x 280 (5th Cir. 2015).
[141] *Id.*
[142] *Id.*
[143] *Id.*

In this case, it is clear Plaintiff pleaded § 1981 and § 1893 as independent causes of action.[144] For example, she lists 42 U.S.C. § 1981 as her "SECOND CAUSE OF ACTION,"[145] followed by her "THIRD CAUSE OF ACTION"[146] for claims arising under § 1983. Nowhere in the allegations under her second cause of action based on § 1981 does she reference § 1983; similarly, Plaintiff does not reference § 1981 in her third cause of action pursuant to § 1983. "[R]equiring § 1981 claims against state actors to be pursued through § 1983 is not a mere pleading formality."[147] Accordingly, because Plaintiff pleaded § 1981 as an independent cause of action against Defendants, and not under the remedial provisions of § 1983, Plaintiff's claims based on § 1981 must be dismissed.

### c. Plaintiff's § 1983 claims

Plaintiff brings § 1983 claims against Defendants alleging they conspired "to retaliate, discriminate, intimidate, isolate, deny promotions, and create a hostile work environment against [Plaintiff],"[148] and that "Devin George (WM) and Darlene Smith harassed [Plaintiff], retaliated against [her] and interfered with the terms and conditions of employment, [and] prevented [Plaintiff from obtaining] promotional opportunities under the Louisiana State Merit System" by hiring, detailing, and promoting employees who were less qualified than Plaintiff.[149] Plaintiff alleges "[t]he pattern and practice of discrimination, harassment, and retaliation against Plaintiff, Deneen Smith(BF), violated Title VII of the Civil Rights Act of 1964 and 1991 as amended."[150] Plaintiff further alleges Defendants' conduct also violates Louisiana Revised Statutes 9:2798.1, because "[t]he

---

[144] *See* R. Doc. 54 at ¶¶ 104–10 (§ 1981 claims), ¶¶ 111–21 (§ 1983 claims)
[145] *Id.* at 38.
[146] *Id.* at 40.
[147] *Felton*, 315 F.3d at 482.
[148] R. Doc. 54 at ¶ 112.
[149] *Id.* at ¶ 115.
[150] *Id.* at ¶ 117.

acts of Devin George and Darlene Smith as alleged herein are malicious, intentional, willful, outrageous, reckless, flagrant misconduct with evil motive and inter [sic] for which they can be held liable."[151]

Defendants assert Plaintiff may not plead Title VII as her underlying § 1983 violation. Further, Defendants contend Plaintiff may not allege an underlying violation of Louisiana Revised Statutes 9:2798.1, as it is a "discretionary immunity statute."[152] Plaintiff counters, citing *Gallentine v. Housing Authority of City of Port Arthur*,[153] apparently arguing that the *conduct* alleged in her compliant violates both Title VII and a separate constitutional or statutory right.[154]

An underlying constitutional or statutory violation is a predicate to liability under § 1983.[155] However, § 1983 "is not an available remedy for deprivation of a statutory right when the right itself"—in this case, the right to be free from discrimination in the workplace under Title VII—"provides an exclusive remedy for violations of its own terms."[156] Thus, although allowing a plaintiff to pursue a separate claim for a violation of a constitutional or statutory right under Title VII is proper, "[a]llowing a plaintiff to state a discrimination claim under § 1983 as well would enable him to sidestep the detailed and specific provisions of Title VII."[157]

In *Gallentine*, the court explained that "even if a plaintiff alleges the same conduct for both Title VII and § 1981 claims, he or she may seek redress under both statutes, as long as the conduct violates both Title VII and a separate constitutional or statutory

---

[151] *Id.* at ¶ 121.
[152] R. Doc. 60-1 at 23.
[153] 919 F. Supp. 2d 787 (E.D. Tex. Jan. 22, 2013).
[154] *Id.* at 810.
[155] *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1574 (5th Cir. 1990) ("Rather than creating substantive rights, § 1983 simply provides a remedy for the rights it designates.").
[156] *Id.* at 1574.
[157] *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir. 1996).

right."[158] In that case, in addition to her Title VII claims, the plaintiff alleged a violation of 42 U.S.C. § 1981, which she brought through § 1983. Although the underlying conduct that formed the basis of Plaintiff's Title VII and § 1981 claims was the same, the plaintiff's § 1983 claim "was being brought for a violation of her rights to make and enforce contracts under § 1981."[159] Thus, the Court found the plaintiff could bring a § 1983 claim in addition to her Title VII claim because she alleged a violation of a separate statutory right under § 1981 apart from Title VII.[160]

In this case, Plaintiff alleges that the actions and inactions of Devin George and Darlene Smith, in their individual capacities, in conspiring to retaliate, discriminate, intimidate, isolate, deny promotions, and create a hostile work environment against her violate 42 U.S.C. § 1983,[161] but does not reference any underlying violation other than Title VII and Louisiana Revised Statutes section 9:2798.1. With respect to Plaintiff's alleged § 1983 claim pursuant to Louisiana Revised Statutes section 9:2798.1, a review of this statute shows that the statute is a "discretionary immunity statute"[162] and does not provide a cause of action for plaintiffs. As a result, Louisiana Revised Statutes section 9:2798.1 does not provide a separate statutory violation under § 1983. Plaintiff has otherwise failed to allege a statutory right separate and apart from those protected by Title VII. In fact, under her § 1983 cause of action, Plaintiff specifically alleges "[t]he pattern or practice of discrimination, harassment, and retaliation against [her]," as detailed in the previous paragraphs within her § 1983 cause of action,[163] "violated Title VII of the Civil

---

[158] 919 F. Supp. 2d at 810.
[159] *Id.* at 810.
[160] *Id.*
[161] R. Doc. 54 at ¶ 111–16.
[162] *See, e.g. Anderson v. Bossier Par. Police Jury*, 49,471 (La. App. 2 Cir. 11/19/14), 153 So. 3d 550, 555, *writ denied*, 2014-2664 (La. 3/13/15), 161 So. 3d 640.
[163] *Id.*

Rights Act of 1964 and 1991."[164] Thus, Plaintiff's reliance on *Gallentine* is misplaced, and her § 1983 claims must be dismissed.

### d. Claims based on Louisiana Revised Statutes 23:301 et seq.

#### i. Against DHH

Plaintiff's fourth cause of action is against her employer, DHH, pursuant to Louisiana Revised Statutes 23:301 *et seq.*[165] As the Fifth Circuit explained in *Raj v. Louisiana State University*, "sovereign immunity bar[s] federal courts from hearing state law claims brought in federal court against state entities."[166] For the purpose of sovereign immunity, DHH, a Louisiana state agency, is considered an "arm of the state" and, therefore, protected by the Eleventh Amendment.[167] As a result, Defendant's motion to dismiss Plaintiff's claims based on Louisiana Revised Statutes 23:301 *et seq.* against DHH is granted.

#### ii. Against Devin George and Darlene Smith in Their Official Capacities

To the extent Plaintiff's state law discrimination claims are alleged against Devin George and Darlene Smith in their official capacities, these claims are also barred by the Eleventh Amendment.[168] "It is well established [that] a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office and that therefore the official-capacity defendants are entitled to invoke

---

[164] *Id.* at ¶ 117; *see also id.* at ¶ 118 ("As a result of the violations of the *Civil Rights Act of 1964 and 1974*, as amended, Deneen Smith is entitled to promotion, back pay, front pay and or compensation for all employee benefits lost as a result of the violations of the *Civil Rights Act of 1964 and 1991*, as amended, attorney fees and costs, as well as compensatory and punitive damages in accordance with applicable law.") (emphasis added).

[165] R. Doc. 23 at ¶ 51.

[166] *Raj v. Louisiana State University*, 714 F.3d 322, 330 (5th Cir. 2013) (*citing Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 117 (1984)).

[167] *See, e.g., Advocacy Ctr. for Elderly & Disabled*, 731 F. Supp. 2d at 589 n.20.

[168] *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.

sovereign immunity."[169] As a result, the Defendants' motion to dismiss Plaintiff's state law discrimination claims against Devin George and Darlene Smith in their official capacities is granted.

### iii. Against Devin George and Darlene Smith in Their Individual Capacities

To the extent Plaintiff alleges discrimination claims under Louisiana state law against Devin George and Darlene Smith in their individual capacities, Plaintiff has failed to state a claim upon which relief could be granted.

To be held in violation of the Employment Discrimination Law (EDL), Louisiana Revised Statutes section 23:301, *et seq.*, "one must (1) receive services from an employee *and* in return give compensation to that employee and (2) must meet the requirement of a minimum number of employees."[170] Pursuant to that statute, an "employer" is "a person, association, legal or commercial entity, the state, or any state agency, board, commission, or political subdivision of the state receiving services from an employee and, in return, giving compensation of any kind to an employee."[171] As it is clear from the face of the complaint that Devin George and Darlene Smith were not Plaintiff's employer, the Defendants' 12(b)(6) motion to dismiss Plaintiff's state law discrimination claims against Devin George and Darlene Smith in their individual capacities is granted.[172]

### e. Claims based on Louisiana Revised Statutes 51:2256

In her fifth cause of action, Plaintiff alleges claims pursuant to Louisiana Revised Statutes section 51:2256, which makes it unlawful for an employer to:

[R]etaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter or Chapter 3-A of Title

---

[169] *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 n.3 (5th Cir. 2011) (internal quotations omitted) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).
[170] *Id.* (emphasis in original).
[171] 9 So. 3d 826, 829 (La. 2009).
[172] *See* No. 15-6369, R. Doc. 45 at 27.

23 of the Louisiana Revised Statutes of 1950, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this Chapter or by Chapter 3-A of Title 23 of the Louisiana Revised Statutes of 1950.[173]

Like Plaintiff's claims based on Louisiana Revised Statutes 23:301 et seq., Plaintiff's state law claims against her employer pursuant to Louisiana Revised Statutes section 51:2256 are barred by Eleventh Amendment sovereign immunity.[174] To the extent Plaintiff's state law claim under this statute is alleged against Devin George and Darlene Smith in their official capacities, these claims are also barred by the Eleventh Amendment.[175]

The Court finds the Plaintiff's claims pursuant to Louisiana Revised Statutes section 51:226 against Devin George and Darlene Smith in their individual capacities must also be dismissed. As explained in *Smith v. Parish of Washington*, it is clear "that as a matter of law, § 51:2256 no longer applies to unlawful discrimination."[176] Instead, liability under Louisiana Revised Statutes section 51:2256 "is limited to retaliation against practices made unlawful under the Louisiana Human Rights Act and does not extend to provisions repealed from that Act and now incorporated into La. R.S. § 23:302."[177] Further, under Louisiana Revised Statutes section 51:2256, co-employees, officers, and directors of the employer are not subject to liability because they are not considered

---

[173] La. Rev. Stat. 51:2256; *Seal v. Gateway Companies, Inc.*, 2002 WL 10456, at *6 (E.D. La. Jan. 3, 2002) ("Louisiana's Employment Discrimination Law and the LHRA permit suits only against 'employers,' which are defined as persons receiving services from an employee *and, in return, giving compensation* of any kind to an employee.") (emphasis in original) (internal quotations and citations omitted).
[174] *See Sartin v. Seven Acres*, 2003 WL 1790847, at *3 (E.D. La. Apr. 2, 2003).
[175] *See Pennhurst State Sch. & Hosp.*, 465 U.S. at 102.
[176] 318 F. Supp. 2d 366, 373 (E.D. La. 2004).
[177] *Id.* (citing *Hollister v. Gallagher*, 2004 WL 224547 (E.D. La. 2003); *Anderson v. Guste Homes*, 2004 WL 224567 (E.D. La. 2004); *Johnson v. Integrated Health Services, Inc.*, 2002 WL 31246762 (E.D. La. 2002)). The amended Louisiana Human Rights Act makes unlawful discriminatory practices: (1) in public accommodations and advertising public accommodations, (2) against breast-feeding mothers, (3) by financial institutions in providing financial services, and (4) in credit transactions. *See Smith v. Parish of Washington*, 318 F. Supp. 2d 366, 371 n.3 (E.D. La. 2004) (citing La. R.S. §§ 51:2247, 51:2248, 51:2247.1, 51:2254 and 51:2255).

"employers" under the statute.[178] Plaintiff's state law claims under Louisiana Revised Statutes section 51:2256 are dismissed.

Accordingly;

**CONCLUSION**

**IT IS ORDERED** that the Defendants' Motion to Dismiss[179] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Defendants Louisiana Department of Health and Hospitals, Darlene Warren Smith, and Devin George's 12(b)(1) Motion to Dismiss Plaintiff Deneen Montgomery-Smith's claims based on EEOC Charge No. 461-2016-00165 as untimely filed is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Louisiana Department of Health and Hospitals, Darlene Warren Smith, and Devin George's 12(b)(6) Motion to Dismiss Plaintiff Deneen Montgomery-Smith's claims based on EEOC Charge No. 461-2016-00165  as res judicata is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants Louisiana Department of Health and Hospitals, Darlene Warren Smith, and Devin George's 12(b)(6) Motion to Dismiss Plaintiff Deneen Montgomery-Smith's claims based on 42 U.S.C. § 1983 is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants Louisiana Department of Health and Hospitals, Darlene Warren Smith, and Devin George's 12(b)(6) Motion to Dismiss

---

[178] *See Seal*, 2002 WL 10456, at *6 ("Louisiana's Employment Discrimination Law and the LHRA permit suits only against 'employers,' which are defined as persons receiving services from an employee *and, in return, giving compensation* of any kind to an employee.") (emphasis in original) (internal quotations and citations omitted).

[179] R. Doc. 60.

Plaintiff Deneen Montgomery-Smith's claims based on 42 U.S.C. § 1981 is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants Louisiana Department of Health and Hospitals, Darlene Warren Smith, and Devin George's 12(b)(6) Motion to Dismiss Plaintiff Deneen Montgomery-Smith's claims based on Louisiana Revised Statutes 23:301 et seq. is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that Defendants Louisiana Department of Health and Hospitals, Darlene Warren Smith, and Devin George's 12(b)(6) Motion to Dismiss Plaintiff Deneen Montgomery-Smith's claims based on Louisiana Revised Statutes 51:2256 is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**New Orleans, Louisiana, this 1st day of March, 2018.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**