# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DENEEN L. MONTGOMERY-SMITH,**<br>     Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-5564** |
| **LOUISIANA DEPARTMENT OF<br>HEALTH AND HOSPITALS, ET AL.,**<br>     Defendants | **SECTION: "E"(3)** |

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed by Defendant Louisiana Department of Health and Hospitals ("DHH").[1] Plaintiff Deneen Montgomery-Smith opposes the motion.[2] For the reasons that follow, the Court grants the motion in full and grants judgment in favor of DHH and against Plaintiff.

## BACKGROUND[3]

The Court assumes familiarity with the facts of this case, which have been aptly summarized in this Court's prior orders.[4] On March 2, 2018, the Court granted in part and denied in part DHH's motion to dismiss.[5] Following the Court's ruling on DHH's motion to dismiss, Plaintiff's remaining claims arise under Title VII of the Civil Rights Act,[6] and are based on: (1) a retaliatory hostile work environment, (2) retaliation, and (3) race discrimination.[7] DHH now seeks summary judgment on those claims.[8]

In its motion, DHH submits it is entitled to judgment as a matter of law on Plaintiff's retaliatory hostile work environment claim, arguing Plaintiff cannot make a

---

[1] R. Doc. 88.
[2] R. Doc. 103.
[3] Unless otherwise indicated, "R. Doc." refers to record documents in the instant matter, No. 17-5564.
[4] *See* R. Doc. 69; No. 15-6369, R. Docs. 45, 78, 142.
[5] R. Doc. 69.
[6] 42 U.S.C. § 2000e.
[7] R. Doc. 54 at ¶¶ 97–103.
[8] R. Doc. 88.

1

prima facie case of a hostile work environment.[9] DHH further contends it is entitled to judgment on Plaintiff's retaliation claim, as Plaintiff's claims of retaliation are not causally connected to Plaintiff's protected conduct.[10] Finally, DHH seeks judgment on Plaintiff's race discrimination claim, contending that, even assuming Plaintiff has stated a prima facie case of race discrimination, DHH has articulated a non-retaliatory reason for its conduct, and Plaintiff cannot meet her burden of showing pretext.[11]

## I. LEGAL STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] "An issue is material if its resolution could affect the outcome of the action."[13] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[14] All reasonable inferences are drawn in favor of the non-moving party.[15] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[16]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."

---

[9] *Id.* at 25–26.
[10] *Id.* at 16–24.
[11] *Id.* at 27–29.
[12] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[13] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[14] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[15] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[16] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).

To satisfy Rule 56's burden of production, the moving party must do one of two things: "the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[17]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[18] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[19] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[20] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the

---

[17] *Celotex*, 477 U.S. at 322–24.
[18] *Id.* at 331–32 (Brennan, J., dissenting).
[19] *See id.* at 332.
[20] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33, 333 n.3.

precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[21]

## II. ANALYSIS

In her amended complaint, Plaintiff alleges she was subjected to a retaliatory hostile work environment, retaliation, and race-based discrimination, all based on conduct that allegedly occurred between March 27, 2015 and December 5, 2016.[22] DHH moves for summary judgment on these claims.[23] The Court discusses each claim separately.

### A. DHH is entitled to summary judgment on Plaintiff's retaliatory hostile work environment claim

Plaintiff alleges she was subjected to a retaliatory hostile work environment. A hostile work environment results from discrimination that does not culminate in a tangible employment action.[24] A hostile work environment:

> Involves repeated conduct ... [that] occur over a series of days or perhaps years and ... [where] a single act of harassment may not be actionable on its own, [while] a discrete-acts claim involves a single act of discrimination such as termination, failure to promote, denial of transfer, or refusal to hire. [A] plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard.[25]

---

[21] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[22] R. Doc. 54.
[23] R. Doc. 88.
[24] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998).
[25] *Rowe v. Jewell*, 88 F. Supp. 3d 647, 674 (E.D. La. 2015) (alterations in original) (internal quotations and citations omitted).

"A workplace environment is hostile when it is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment."[26]

Plaintiff's hostile work environment claim differs from the typical hostile work environment claim in that Plaintiff claims DHH created and permitted a hostile work environment in retaliation for her protected activities, as opposed to a hostile work environment based on discrimination against a protected group under Title VII.[27] "The Fifth Circuit has neither recognized nor foreclosed retaliatory hostile work environment claims."[28] "At least five other circuits recognize such a cause of action."[29] "Given the absence of binding authority, courts in the Fifth Circuit have assumed that a retaliatory hostile work environment claim can be brought."[30]

The Court need not decide whether a retaliatory hostile work environment is an actionable claim under Title VII, however, as Plaintiff's proffered evidence of a hostile work environment is neither severe nor pervasive enough to overcome DHH's summary judgment motion.

Courts in this circuit have found conduct demonstrably more severe and more pervasive than Plaintiff's allegations in the instant matter did not alter the terms and conditions of the plaintiffs' employment. For example, in *EEOC v. WC & M Enterprises*, the Fifth Circuit concluded the plaintiff's allegation that (1) she was placed on administrative leave for three weeks; (2) upon returning, she was reassigned to a new

---

[26] *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quotations omitted).
[27] *See* R. Doc. 45.
[28] *See Zavala v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 2017 WL 274133, at *2 (N.D. Tex. Jan. 20, 2017) (citing *Fallon v. Potter*, 277 F. App'x. 422, 424 (5th Cir. 2008)).
[29] *Id.* (collecting cases).
[30] *Id.* (citing *Rowe*, 88 F. Supp. 3d at 673; *Tejada v. Travis Ass'n for the Blind*, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014)).

supervisor and given a heavier workload; (3) personal items were taken from her desk; (4) the locks on her office had been changed and she was not allowed to close her office door; and (5) she was chastised by superiors and ostracized by co-workers, did not "rise to the level of material adversity but instead fall into the category of 'petty slights, minor annoyances, and simple lack of good manners.'"[31] Similarly, in *Escalante v. Holder*, the Western District of Texas determined the plaintiff was subjected to twenty-six discrete events falling into four categories: "(1) unwarranted comments and rude behavior . . .; (2) temporary change of schedule, the three and one half week-period in which Plaintiff worked weekends and some evenings and added duty assignments when Plaintiff was asked to help with the official count; (3) Plaintiff's not attending a training conference; and (4) an investigation into Plaintiff's alleged breach of policy by releasing confidential information and her temporary transfer to the religious services unit." The court concluded that these allegations, even when considered collectively, did not alter the terms and conditions of the plaintiff's employment, and therefore did not create a hostile work environment.[32]

In this case, Plaintiff bases her hostile work environment claim on: (1) the conduct of Darlene Smith, Plaintiff's co-worker who allegedly laughed and glared at Plaintiff each time Plaintiff was denied a promotion;[33] (2) Plaintiff's office being moved from the sixth floor to the fourth floor;[34] (3) Plaintiff's not being invited to the 2017 Thanksgiving

---

[31] 496 F.3d 393, 399–400 (5th Cir. 2007).
[32] No. 09-368, 2011 WL 1528472, at *8 (W.D. Tex. Apr. 20, 2011) (citing *Ellis v. Principi*, 246 F. App'x 867, 871–72 (5th Cir. 2007)); *see also Shiner*, 546 F. App'x at 408 (comments from a co-worker did not create a hostile work environment because they were not pervasive); *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563–64 (5th Cir. 1998) ("McConathy has not alleged sufficiently pervasive disability-based harassment so as to state a claim upon which relief can be granted. Even if we assume everything she claims about Quigley is true, his actions, while insensitive and rude, would not be sufficient as a matter of law to state a claim of hostile environment harassment.").
[33] R. Doc. 88-3 at 56:19–57:14; R. Doc. 103-1 at 51–54.
[34] R. Doc. 88-3 at 126; R. Doc. 103-1 at 51–54.

luncheon;[35] (4) Plaintiff's not being asked to participate in the office's breast cancer awareness promotion, "Pink Day";[36] (5) Plaintiff's being isolated from her co-workers; and (6) other employees being instructed not to talk to Plaintiff.[37] Like the plaintiffs' claims in *WC & M Enterprises* and *Escalante*, these allegations amount to the kinds of "petty slights" and "minor annoyances," the Fifth Circuit has cautioned do not alter the terms and conditions of employment,[38] and, as a result, do not create a hostile work environment. DHH is entitled summary judgment on Plaintiff's retaliatory hostile work environment claim.

### B. DHH is entitled to summary judgment on Plaintiff's retaliation claim

Plaintiff alleges that, between March 27, 2015 and December 5, 2016, she was denied promotional opportunities in retaliation for having filed grievances, filed Equal Employment Opportunity Commission ("EEOC") charges, and initiated lawsuits against DHH.[39]

To establish a prima facie case of retaliation in this circuit, a plaintiff must show that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected

---

[35] R. Doc. 88-3 at 128:18–131:1; R. Doc. 103-1 at 51–54.
[36] R. Doc. 88-3 at 128:18–131:1; R. Doc. 103-1 at 51–54.
[37] R. Doc. 88-3 at 131:2–135:6; R. Doc. 103-1 at 51–54.
[38] *See Stewart*, 586 F.3d at 331 (quoting *Burlington*, 548 U.S. at 68); *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (emphasis added); *Grice v. Technologies, Inc.*, 216 F. App'x 41 (5th Cir. 2007). The Court also notes that Plaintiff has not provided the dates these alleged events took place, which are necessary to establish that there is a dispute of fact with respect to whether at least one event occurred during the relevant time period. Although acts that occurred outside the statutory time period may serve as "relevant background evidence in a proceeding in which the status of a current practice is at issue," a hostile work environment claim is timely only if "at least one act falls within the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112, 122 (2002). Even assuming each of the alleged acts occurred within the relevant timeframe, Plaintiff's allegations nevertheless do not show she was subjected to a hostile work environment.
[39] R. Doc. 54 at ¶ 76. In her opposition to DHH's motion to dismiss, Plaintiff stated she "does not seek to make any claims prior to March 26, 2015," R. Doc. 64 at 35, and that "[t]he denial of promotions and details in this case are between effective dates of August 3, 2015 and December 5, 2016," *id.* at 25–26.

7

activity and the adverse employment action.[40] If a plaintiff cannot establish any of these three prerequisites, she has failed to state a prima facie case of retaliation, and summary judgment is appropriate.[41] With respect to the second prong of the analysis, in *Burlington Northern & Santa Fe Railway Co. v. White*, the U.S. Supreme Court held that, because the discrimination and retaliation provisions of Title VII have different statutory language and purposes, "the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."[42] Based on this understanding, the Court held that a plaintiff claiming retaliation under Title VII need only show that a reasonable employee would have found the alleged retaliatory action "materially adverse" in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[43] With respect to the third prong, a plaintiff may establish causation by demonstrating that the "temporal proximity" of the plaintiff's protected conduct and the adverse employment action were "very close."[44]

The establishment of a prima facie case gives rise to a rebuttable presumption that the defendant retaliated against the plaintiff.[45] Once the plaintiff establishes all three prongs of the analysis, the burden shifts to the defendant, who must then articulate a legitimate, nondiscriminatory or non-retaliatory reason for the challenged employment action.[46] Once a defendant asserts such a reason, the presumption of retaliation is

---

[40] *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007); *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *Mota v. Univ. of Tex. Houst. Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001).
[41] *See Montemayor*, 276 F.3d at 692.
[42] 548 U.S. 53, 64 (2006).
[43] *Id.* at 68 (quotation marks and citation omitted).
[44] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).
[45] *Id.*
[46] *McCoy*, 492 F.3d at 557.

defeated,[47] and summary judgment is appropriate unless the plaintiff can prove that the defendant's rationale is pretextual.[48]

To show she experienced an adverse employment action, Plaintiff need only show DHH's retaliatory conduct "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[49] Plaintiff argues, "Not receiving raises and promotions for 11 years rises to the level of [being] materially adverse."[50] Plaintiff complains of seven positions for which she was passed over in favor of individuals she contends were less qualified candidates and two positions that were canceled after Plaintiff submitted her application. Altogether, Plaintiff points to nine positions to which she was not hired as forming the basis of her retaliation claim: (1) Program Manager 2, to which Plaintiff applied on June 27, 2015 and to which Robin Lewis was promoted; (2) Program Manager 1-B, to which Plaintiff applied on June 27, 2015 and to which Jemimah Mickel was promoted; (3) Program Manager 1-B, to which Plaintiff applied on August 29, 2015 which was cancelled; (4) Program Manager 1-B, to which Plaintiff applied on September 15, 2015, and to which Omar Khalid was promoted; (6) Program Monitor Supervisor, for which Plaintiff provides no application date, and to which Jira Shea Davis was promoted; (7) Program Manager 1-B, to which Plaintiff applied on May 22, 2016 which was cancelled; (8) Program Monitor Supervisor, to which Plaintiff applied on September 7, 2016, and to which Lauren Tran was promoted; and (9) Program Manager

---

[47] *Montemayor*, 276 F.3d at 692.
[48] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–03 (1973).
[49] *Id.* at 68 (quotation marks and citation omitted).
[50] R. Doc. 103 at 11. Plaintiff also submits Hugh Ely, who was promoted to Deputy Secretary of DHH in 2015, told Plaintiff "she would never be promoted as a DHH employee." *Id.* The Court notes that Plaintiff does not state when Mr. Ely made this alleged comment; however, this is the same evidence Plaintiff offered in support of her retaliation claim in a prior suit against DHH. Although acts that occurred outside the statutory time period may serve as "relevant background evidence in a proceeding in which the status of a current practice is at issue," "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002).

II, to which Plaintiff applied on September 16, 2016, and to which Jemimah Mickel was promoted.[51] According to Plaintiff, "given her experience, her years of supervisory experience of professional people in various regions of the State, as well as her educational background, as well as the fact that she had been employed with the State since 1989, has an advanced degree, . . . she was the better choice."[52]

Plaintiff contends she has established a prima facie case, thereby entitling her to a rebuttable presumption of retaliation. The Court reiterates that in order to establish a prima facie case of retaliation, Plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action.[53]

It is undisputed that Plaintiff has filed several grievances against DHH.[54] It is also undisputed that the filing of these grievances is a protected activity under Title VII.[55] Moreover, Fifth Circuit precedent dictates that the denial of a promotion constitutes an adverse employment action.[56] Thus, the first two prongs are met, and Plaintiff's retaliation claim turns on whether there exists a causal connection between her Title VII protected activity and her retaliation claim,[57] and, if so, whether DHH has articulated a legitimate, non-retaliatory reason for hiring other candidates over Plaintiff and for canceling positions after Plaintiff submitted her application.[58]

---

[51] R. Doc. 54 ¶ 14.
[52] R. Doc. 103 at 11, 12, 17.
[53] *Id.* at 556–57.
[54] R. Doc. 88-3 at 2–3; R. Doc. 103-1 at 11–13.
[55] R. Doc. 88 at 16.
[56] *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528, 532 n.2 (5th Cir. 2003) (collecting cases); *see also Alvarado v. Texas Rangers*, 492 F.3d 605, 615–16 (5th Cir. 2007); *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").
[57] *McCoy,* 492 F.3d at 556–57.
[58] *Id.* at 557.

Because the Court concludes Plaintiff has failed to establish the third prong, which requires her to show a causal connection between her filing an EEOC charge and subsequently being denied a promotion, Plaintiff has failed to establish a prima facie case of retaliation and, therefore, is not entitled to a rebuttable presumption of discrimination.

Plaintiff filed her third employment discrimination charge against DHH on March 26, 2015.[59] It is this third charge that is the subject of Plaintiff's retaliation claim and the only charge relevant to the Court's analysis. Plaintiff applied for the Program Manager 2 position on June 27, 2015.[60] DHH hired Robin Lewis for the Program Manager 2 position instead of Plaintiff on August 3, 2015, over four months after Plaintiff filed her March 26, 2015 EEOC charge.[61] As the Court previously explained, a plaintiff may establish causation by demonstrating that the "temporal proximity" of her protected conduct and the adverse employment action were "very close."[62] The U.S. Supreme Court has cited with approval circuit court cases in which the court found three to four month periods too far removed to allow for a temporal inference of causation.[63]

The Fifth Circuit has affirmed the granting of summary judgment to defendants when plaintiffs make only "timing" allegations to establish causation without any additional supporting evidence.[64] On the other hand, the Fifth Circuit in *Shirley v.*

---

[59] R. Doc. 30-4 at 3. Plaintiff filed an employment discrimination suit against DHH on April 13, 2007 in the Civil District Court for the Parish of Orleans, R. Doc. 54 at ¶ 6, 7, and a second suit against DHH on October 24, 2008, *id.* at ¶ 9. The 2007 and 2008 suits were settled in November 2011. R. Doc. 54, ¶¶ 8–9, 28. Plaintiff filed her fourth charge on November 5, 2015. No. 15-6369, R. Doc. 23 at ¶ 34. Plaintiff filed her fifth EEOC charge on February 9, 2017. R. Doc. 54 at ¶ 76.1. Only Plaintiff's third charge covers the allegations listed above.
[60] R. Doc. 54 ¶ 14.
[61] *Id.*
[62] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).
[63] *Id.* at 273–74.
[64] *Strong v. Univ. Healthcare Sys. L.L.C.*, 482 F.3d 802, 807 (5th Cir. 2007) (citing *Roberson v. Alltel Inform. Servs.*, 373 F.3d 647, 656 (5th Cir. 2004)) ("Again, temporal proximity alone is insufficient to prove but for causation.").

*Chrysler First, Inc.*,[65] affirmed the district court's denial of summary judgment upon a finding that the plaintiff proved "but for" causation when the plaintiff not only relied on temporal proximity but in addition showed she had no disciplinary history during her nine years of employment and was fired quickly for alleged infractions for which the defendant offered no evidence.[66] "[I]mportantly, [the plaintiff's] boss made disparaging comments about her EEOC complaint and 'harassed [her] to death about it' before firing her."[67]

In this case, other than noting the time between the filing of her third EEOC charge and subsequently being denied a series of promotions between three and eighteen months after filing her charge, Plaintiff merely states that "there is no other explanation" for why she was not promoted "other than the fact that she had filed claims against Vital records regarding grievances and her prior lawsuits."[68] "[T]he mere fact that some adverse action is taken after an employee engages in some protected activity will not always be enough for a prima facie case."[69] Thus, the Court concludes Plaintiff's protected conduct and DHH's hiring of Robin Lewis for the Program Manager 2 position, which occurred over four months apart, without more, was not sufficiently close to establish causation. Because Plaintiff has not established her prima facie case, she is not entitled to a rebuttable presumption of retaliation. The Court will grant judgment in favor of DHH on Plaintiff's Title VII retaliation claim.[70]

---

[65] 970 F.2d 39 (5th Cir. 1992).
[66] *Id.* at 43.
[67] *Strong*, 482 F.3d at 807.
[68] R. Doc. 103 at 11, 12, 17.
[69] *Swanson*, 110 F.3d at 1188 n.3.
[70] The Court notes that, even if Plaintiff were able to show the alleged acts of retaliation were causally connected to her protected activity, DHH has articulated a legitimate, non-retaliatory reason for each of their hiring decisions, R. Doc. 88 at 21–24, and Plaintiff has not offered any evidence that these reasons are mere pretext.

### C. DHH is entitled to summary judgment on Plaintiff's race discrimination claim

Under Title VII, employers are prohibited from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual because of such individual's race, or national origin."[71] Because the record in this case contains no direct evidence of race discrimination, the Court analyzes Plaintiff's discrimination claim using a three-part burden shifting analysis, as set forth in *McDonnell Douglas Corp. v. Green*.[72] "To establish a prima facie case of employment discrimination under *McDonnell Douglas*, a plaintiff must establish [by a preponderance of the evidence] that [s]he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, . . . that other similarly situated employees were treated more favorably."[73]

Under *McDonnell Douglas*, Plaintiff must first establish a prima facie case of discrimination.[74] If the prima facie case is successfully established, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its action.[75] At the summary judgment stage, the defendant's burden at the second stage of the *McDonnell Douglas* burden-shifting paradigm "is one of production, not persuasion; it 'can involve no credibility assessment.'"[76] Finally, if the defendant meets its burden, the

---

[71] 42 U.S.C. § 2000e-2(a)(1).
[72] 411 U.S. 802, 804 (1973); *see also Tex. Dep't of C'mty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *Byers v. Dall. Morning News*, 209 F.3d 419, 425–26 (5th Cir. 2000).
[73] *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004); *Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998); *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).
[74] *Byers*, 209 F.3d at 425–26.
[75] *Id.*
[76] *Reeves*, 530 U.S. at 142.

13

burden shifts back to the plaintiff to demonstrate that defendant's nondiscriminatory action was a mere pretext for discrimination.[77]

For example, in *Levias v. Texas Department of Criminal Justice*, the court determined the plaintiff had stated a prima facie case of race discrimination, thereby shifting the burden to the employer to state a non-racial reason for not promoting the plaintiff.[78] The employer argued it did not promote the plaintiff because the employer was "impressed with [the candidate it ultimately promoted's] interview, but was not impressed with [the plaintiff's] interview."[79] Noting that it could not make a credibility assessment, the court accepted the employer's race-neutral reason for not promoting the plaintiff, and went on to analyze whether the plaintiff had demonstrated that the employer's justification for its conduct was "unworthy of credence."[80]

Plaintiff contends DHH's promotion of Lauren Tran, a white female, and Omar Khalid, a white male, over Plaintiff was racially motivated.[81] Even assuming these allegations make out a prima facie case of racial discrimination, however, DHH has articulated a legitimate, race-neutral reason for hiring Ms. Tran and Mr. Khalid over Plaintiff.[82] In his deposition, Mr. George testified that he selected Ms. Tran for the position because she: (1) had been recommended by the interview panel, of which he was not a part; (2) was a very motivated employee; (3) had innovative ideas as to how DHH might better collaborate with stakeholders; (4) thinks outside the box; (5) has a strong team-player attitude; (6) has a willingness to above and beyond to help customers and

---

[77] *Id.*
[78] 352 F. Supp. 2d 751, 768–69 (S.D. Tex. 2004).
[79] *Id.* at 768.
[80] *Id.* at 769 (citing *Reeves*, 530 U.S. at 143).
[81] R. Doc. 54 at ¶ 59. Plaintiff at times submits Mr. Khalid is a white male, while at other times she contends he is a Muslim. Because she alleges race-based discrimination, as opposed to religious discrimination, the Court assumes for purposes of this motion that Mr. Khalid is white.
[82] *McCoy*, 492 F.3d at 557.

14

staff; (7) was the impetus for Vital Records setting up a call center; (8) had the best knowledge about LEERS for when funeral homes call; and (9) had quality improvement, performance improvement, and data quality from Ochsner.[83]

DHH has also stated a legitimate, race neutral reason for promoting Mr. Khalid. Mr. George testified that he promoted Mr. Khalid because, among other things, Mr. Khalid had: (1) worked as a field representative; (2) worked as the Field Services Manager; (3) worked in Legislative and Governmental Affairs; (4) totally revamped the Vital Records website; (5) learned everything he could about the LEERS and understood the technology behind it; and (6) Mr. Khalid was the person Mr. George went to for presentations, reports, and legislative impacts.[84]

DHH having articulated race-neutral reasons for hiring Ms. Tran and Mr. Khalid instead of Plaintiff, the burden shifts to Plaintiff to show DHH's reasons for hiring Ms. Tran and Mr. Khalid rather than her are mere pretext.[85] Plaintiff may prove pretext by "either showing that a discriminatory reason motivated the defendant or by showing that the proffered reason is unworthy of credence."[86] "To overcome a motion for summary judgment of course, the plaintiff need only produce evidence to create a genuine issue of material fact concerning pretext."[87] To carry her burden, "the plaintiff must produce substantial evidence of pretext."[88] "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient."[89] Further, the Fifth Circuit has consistently

---

[83] R. Doc. 88-4 at 218:10–223:17.
[84] *Id.* at 152:6–153:21.
[85] *Byers*, 209 F.3d at 425–26.
[86] *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 815 (5th Cir. 1993) (internal citations omitted).
[87] *Id.*
[88] *Auguster v. Vermillion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001).
[89] *Id.*

held that a plaintiff's "subjective belief" of discrimination alone is insufficient to establish pretext.[90]

Plaintiff points to Devin George's deposition testimony in which Mr. George "acknowledged that promotions must be made subject to Civil Service Rule [22] and that he is the appointing authority for Vital Records and is responsible for hiring, firing and disciplining employees."[91] She argues that, because she considers herself the "better choice," and Rule 22 requires that "selection and advancement [be made] on the basis of relative ability, knowledge and skills after a fair and open competition,"[92] she should have been promoted over Ms. Tran and Mr. Khalid in accordance with Rule 22. The Court finds this argument without merit, as it is based on Plaintiff's subjective belief that she was more qualified for the positions than Ms. Tran and Mr. Khalid.[93] That she believes she was better suited for the positions than the two candidates DHH ultimately hired does not demonstrate DHH's reasoning for promoting Ms. Tran and Mr. Khalid is "unworthy of credence." Plaintiff has not provided "substantial evidence" of pretext.[94] Because Plaintiff has failed to show DHH's legitimate, non-racial reason for not promoting Plaintiff is pretext, the Court will grant judgment in favor of DHH.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that Defendant Louisiana Department of Health and Hospitals' motion for summary judgment be and hereby is **GRANTED**.[95]

---

[90] *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995).
[91] R. Doc. 103 at 15.
[92] *Id.* at 14.
[93] *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995).
[94] *See Auguster*, 249 F.3d at 402–03.
[95] R. Doc. 88.

16

**IT IS FURTHER ORDERED** that there be judgment in favor of Defendant Louisiana Department of Health and Hospitals and against Plaintiff Deneen Montgomery-Smith.

**New Orleans, Louisiana, this 6th day of August, 2018.**

*Susie Morgan*
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**